## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

IN RE PETITION OF

ELLIOT CARLSON;

REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS;

AMERICAN HISTORICAL
ASSOCIATION;

NATIONAL SECURITY ARCHIVE;                Miscellaneous Action No. _____

NAVAL HISTORICAL FOUNDATION;

NAVAL INSTITUTE PRESS;

ORGANIZATION OF AMERICAN
HISTORIANS;

AND

SOCIETY FOR MILITARY
HISTORY

---

## MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR ORDER DIRECTING
## RELEASE OF TRANSCRIPTS OF CERTAIN TESTIMONY FROM AUGUST, 1942
## GRAND JURY INVESTIGATION OF THE *CHICAGO TRIBUNE*

---

Historian and author Elliot Carlson, the Reporters Committee for Freedom of the Press,

and the American Historical Association, the National Security Archive, the Naval Historical

Foundation, the Naval Institute Press, the Organization of American Historians, and the Society

for Military History (hereinafter, collectively, the "Coalition") hereby submit this Memorandum

of Law in support of the concurrently filed petition for an order unsealing the transcripts of

certain witness testimony given before a grand jury in Chicago in August of 1942.

## INTRODUCTION

By the concurrently filed Petition, the Coalition respectfully requests that the Court

exercise its inherent supervisory authority to make public grand jury testimony of immense

historical importance.  The testimony sought was given in August of 1942 in connection with the

first and, to date, only attempt by the U.S. government to prosecute a member of the mainstream

press for alleged violations of the Espionage Act of 1917.  The government's effort to obtain a

grand jury indictment against the *Chicago Tribune* (the "*Tribune*") at the height of World War II

speaks not only to the relationship between the government and the news media during wartime,

but to broader, fundamental issues concerning democracy and freedom of the press.  Particularly

now, when the U.S. government is pursuing an unprecedented number of Espionage Act

prosecutions aimed at alleged leaks of classified information, the public has a compelling interest

in understanding this historically significant event.  For the reasons set forth herein, the Coalition

requests that the Petition be granted, and the testimony given in the *Tribune* grand jury

proceeding released.

## FACTUAL BACKGROUND[1]

On June 7, 1942, the *Tribune* ran a front page story by war correspondent Stanley

Johnston ("Johnston") headlined "NAVY HAD WORD OF JAP PLAN TO STRIKE AT SEA."

The article, which cited "reliable sources in the naval intelligence," appeared to be based on a

leaked classified Navy dispatch, and reported that the Navy had detailed information concerning

---

[1]  The Coalition hereby incorporates by reference the detailed factual background concerning the
*Tribune* article and ensuing grand jury investigation from the Declaration of Elliot Carlson
(hereinafter "Carlson Decl."). (*See* Carlson Decl. at ¶¶ 3–4, 10–18, attached as Exhibit A
hereto.)

the Japanese military's plan to attack U.S forces at Midway, several days in advance of the famed battle. Military and other government officials—including President Franklin D. Roosevelt—were incensed, believing that Johnston's Midway story revealed that the Navy had successfully cracked the radio code used by the Japanese forces to encrypt their communications.

In August of 1942, the U.S. Department of Justice convened a grand jury in Chicago to investigate whether Johnston and the *Tribune* had violated the Espionage Act. The grand jury heard testimony from eight naval officers—Rear Admiral Frederick C. Sherman, Commander Morton Seligman, Lieutenant Commander Edward O'Donnell, Lieutenant Commander Edward Eldridge, and four unknown officers.[2] Johnston, J. Loy ("Pat") Maloney, and Wayne Thomis of the *Tribune* also testified before the grand jury, as did two editors of other newspapers that had also published Johnston's story: Ralph Sharp of the *New York Daily News*, and Frank Waldrop of the *Washington Times-Herald*. On August 19, 1942, the grand jury declined to issue any indictments. No one was ever prosecuted in connection with Johnston's Midway story.

In the more than 70 years since Johnston's story was first published, numerous documents and other information concerning the *Tribune* grand jury investigation have come to light, and been the subject of scholarly analysis, historical and legal discussion, and public debate. The testimony of the thirteen grand jury witnesses, however, has remained under seal.

## ARGUMENT

### I. Courts have inherent authority to order disclosure of grand jury records.

"[S]ince the 17th century," proceedings before a grand jury have generally "been closed to the public, and records of such proceedings have been kept from the public eye." *Douglas Oil Co. of Calif. v. Petrol Stops Nw.*, 441 U.S. 211, 218–19 (1979); *see also Press-Enterprise Co. v.*

---

[2] Conflicting press accounts from the time place the number of unidentified U.S. Navy officers who testified before the grand jury at either three or four.

*Superior Court*, 478 U.S. 1, 10 (1986) (grand jury proceedings "have traditionally been closed to

the public and the accused"). The U.S. Supreme Court identified the following reasons for

maintaining grand jury secrecy:

> (1) To prevent the escape of those whose indictment may be contemplated; (2) to
> insure the utmost freedom to the grand jury in its deliberations, and to prevent
> persons subject to indictment or their friends from importuning the grand jurors;
> (3) to prevent subornation of perjury or tampering with the witnesses who may
> testify before [the] grand jury and later appear at the trial of those indicted by it;
> (4) to encourage free and untrammeled disclosures by persons who have
> information with respect to the commission of crimes; (5) to protect innocent
> accused who is exonerated from disclosure of the fact that he has been under
> investigation, and from the expense of standing trial where there was no
> probability of guilt.

*Id.* at 219 n.10 (internal citation and quotation omitted).

"The secrecy of grand jury testimony," however, "is not absolute." *In re Biaggi*, 478

F.2d 489, 492 (2d Cir. 1973) (Friendly, J.). Courts have discretion to order the disclosure of

grand jury material pursuant to their inherent supervisory authority over grand jury matters. *See*

*Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399 (1959) (stating that federal courts

"have been nearly unanimous in regarding disclosure [of grand jury material] as committed to

the discretion of the trial judge"); *In re Am. Historical Ass'n*, 49 F. Supp. 2d 274, 286 (S.D.N.Y.

1999) (explaining that "federal courts historically have exercised supervisory power in this area

to develop exceptions to the rule of secrecy when appropriate").

Federal Rule of Criminal Procedure 6(e), for example, codifies several specific

exceptions to the rule of grand jury secrecy that have been developed over time by the federal

courts. *See* Fed. R. Crim. P. 6(e)(3)(E).[3] As the advisory committee note to Rule 6(e) states, that

---

[3] None of the express exceptions to grand jury secrecy identified in Rule 6(e) speak directly to
the situation here. Accordingly, the Coalition requests that the Court invoke its inherent
supervisory authority to disclose the transcripts at issue, as other federal courts have done when
faced with similar requests to unseal historically significant grand jury records.

4

rule "continues the traditional practice of secrecy on the part of members of the grand jury, *except when the court permits a disclosure*." Fed. R. Crim. P. 6, advisory committee's note (citations omitted and emphasis added); *In re Am. Historical Ass'n*, 49 F. Supp. 2d. at 286 (stating that the "exceptions to the secrecy rule" found in Rule 6(e) "have developed through conformance of Rule 6 to the 'developments wrought in decisions of the federal courts,' not *vice versa*") *see also Pittsburgh Plate Glass Co.*, 360 U.S. at 395 (stating that "Rule 6(e) is but declaratory of" the principle that disclosure of grand jury material is "committed to the discretion of the trial judge").

Several circuits have held that federal courts have inherent authority to order disclosure of grand jury records in special circumstances that fall outside the express wording of Rule 6(e). *See In re Grand Jury Proceedings*, 417 F.3d 18, 26 (1st Cir. 2005) ("We now decide that [Rule 6(e)'s] phrasing can, and should, accommodate rare exceptions premised on inherent judicial power."); *In re Craig*, 131 F.3d 99, 101–02 (2d Cir. 1997) (analyzing at length the court's "inherent supervisory authority" over grand juries and concluding that "there are certain 'special circumstances' in which release of grand jury records is appropriate even outside of the boundaries of the rule"); *In re Hastings*, 735 F.2d 1261, 1272 (11th Cir. 1984) (holding that "a district court may act outside the strict bounds of Rule 6(e), in reliance upon its historic supervisory power" in certain situations); *In re Grand Jury Subpoena, Judith Miller*, 493 F.3d 152, 154 (D.C. Cir. 2007) (ordering disclosure of materials that had been revealed during trial or to the public, even though such disclosure was not explicitly authorized by Rule 6(e)).

The Seventh Circuit, albeit in dicta, has acknowledged that courts may have "discretion to slip entirely around Rule 6(e) and permit disclosure" of grand jury material in special circumstances. *In re Special February, 1975 Grand Jury*, 662 F.2d 1232, 1235–36 (7th Cir.

1981), *aff'd on other grounds sub nom., United States v. Baggot*, 463 U.S. 476 (1983). In that case, the IRS sought certain evidence generated by a grand jury investigation against James Baggot, who pleaded guilty to misdemeanors under the Commodities Exchange Act, to aid tax collection. *In re Special February, 1975 Grand Jury*, 662 F.2d. at 1233. While the Seventh Circuit ultimately rejected the IRS's request for grand jury records because the agency "ha[d] other effective statutory means to accomplish its civil purposes," it was careful to emphasize that "testimony or documents presented to a grand jury" are not "forever foreclosed from future revelation . . . ." *Id.* at 1236–37. Rather, the court stated that "[w]e may not always be bound by a strict and literal interpretation of Rule 6(e) in the situation where there is some extraordinary and compelling need for disclosure in the interest of justice, and little traditional need for secrecy remains . . . ." *Id.* at 1236.

This conclusion is supported by U.S. Supreme Court precedent concerning the secrecy of grand jury proceedings, which underscores the discretion and flexibility federal courts possess to determine whether disclosure is appropriate. *See id.* (discussing cases); *see also Douglas Oil*, 441 U.S. at 223 ("we emphasize that a court called upon to determine whether grand jury transcripts should be released necessarily is infused with substantial discretion"); *United States v. Sells*, 463 U.S. 418, 443 (1983) ("as the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification").

In sum, it is "unquestionable that courts possess supervisory power to develop rules regarding this discrete aspect of grand jury procedure." *In re Am. Historical Ass'n*, 49 F. Supp. 2d at 286. Exercise of a court's inherent discretion to order disclosure of grand jury material in special circumstances "is fully consonant with the role of the supervising court and will not

unravel the foundations of secrecy upon which the grand jury is premised." *In re Craig*, 131

F.3d at 103.

## II. Federal courts unseal historically significant grand jury testimony where the material is decades old, traditional justifications for secrecy have disappeared, and the witnesses are deceased.

The Seventh Circuit has not yet addressed the appropriate standard for disclosure when

access to historic grand jury material is sought for the benefit of the public. However, federal

courts that have confronted this issue agree that disclosure of grand jury testimony is appropriate

where, as here: (1) the material is historically significant, (2) the testimony is decades old, (3)

the traditional justifications for secrecy have disappeared, and (4) the witnesses are deceased.

In *In re Craig*, the leading case on unsealing historic grand jury testimony, the Second

Circuit—while noting that "nothing . . . prohibits historical interest, on its own, from justifying

release of grand jury material in an appropriate case," *In re Craig*, 131 F.3d at 105—identified

nine non-exhaustive factors for courts to consider when confronted with petitions to unseal

records for reasons other than those specified in Rule 6(e):

> (i) the identity of the party seeking disclosure; (ii) whether the defendant to the grand jury proceeding or the government opposes the disclosure; (iii) why disclosure is being sought in the particular case; (iv) what specific information is being sought for disclosure; (v) how long ago the grand jury proceedings took place; (vi) the current status of the principals of the grand jury proceedings and that of their families; (vii) the extent to which the desired material — either permissibly or impermissibly — has been previously made public; (viii) whether witnesses to the grand jury proceedings who might be affected by disclosure are still alive; and (ix) the additional need for maintaining secrecy in the particular case in question.

*Id.* at 106. Elaborating on these factors, the Second Circuit explained that the "timing of the

request remains one of the most crucial elements," because continued historical interest in the

information "serves as an important indication that the public's interest in release of the

information is substantial," and because "the passage of time erodes many of the justifications

for continued secrecy." *Id.* at 107. The court added that "an argument that significant historical interest militates in favor of release is totally appropriate and even weighty." *Id.* at 106.

The U.S. District Court for the District of Columbia applied these factors when it granted a request by a coalition of historians and historical associations to release President Nixon's 36-year-old grand jury testimony from the Watergate investigation. *In re Kutler*, 800 F. Supp. 2d 42 (D.D.C. 2011). The court found that the records were of great historical importance and that disclosure "would likely enhance the existing historical record, foster further scholarly discussion, and improve the public's understanding of a significant historical event." *Id.* at 48. The "traditional objectives of grand jury secrecy" were not implicated by the request, because Nixon, the witness, had passed away, and the investigation was closed. *Id.* at 49. The court rejected the argument that "disclosing thirty-six-year-old records for historical purposes will deter future witnesses from providing grand jury testimony," especially "'compared with far more immediate potential causes of disclosure, such as leaks, general press attention, public statements by witnesses and revelations at trial.'" *Id.* (quoting *In re Am. Historical Ass'n*, 49 F. Supp. 2d at 292). Because Nixon and "many Watergate principals who are likely mentioned in his testimony are deceased," the Court found that privacy interests were minimal. *Id.*

The Southern District of New York likewise granted a petition by a coalition of historians to unseal testimony related to the investigation of Alger Hiss, a former high-ranking State Department official who was accused of being a Soviet spy. *In re Am. Historical Ass'n*, 49 F. Supp. 2d at 277. After concluding that Rule 6(e) was not a barrier to such a request, the court found that there were no national security or privacy interests implicated by the 50-year-old grand jury testimony, and that disclosure would not undermine any of the rationales for grand jury secrecy. *Id.* at 291. The grand jury investigation had long ended, all appeals had been

8

resolved, the witnesses' involvement in the investigation was public knowledge, and most of the witnesses had since died. *Id.* at 292–93. The court concluded that any inhibiting effect of disclosure of old testimony on future grand juries was "negligible" and "insignificant," especially compared with the normal risks of disclosure accompanying any testimony. *Id.* at 292. The matter was of historical importance because it was widely publicized in its own time and continued to receive attention with the media, historians, and the public throughout the decades. *Id.* at 293–94. As the court explained:

> [t]he public must acquire, at an appropriate time, a significant, if not compelling, interest in ensuring the pages of history are based upon the fullest possible record. This would seem especially so where, as here, a case fosters vigorous and sustained debate not only about the case itself, but also about broader issues concerning fundamental and, at times, countervailing aspects of our democracy— freedom of expression, . . . governmental investigative power, . . . and the role and function of grand juries themselves.

*Id.* at 295.

Other district courts have similarly unsealed historically significant grand jury testimony. The Southern District of New York ordered disclosure of 57-year-old testimony related to the Julius and Ethel Rosenberg grand jury, in part because the witnesses had died or otherwise could not be located. *In re Nat'l Sec. Archive*, No. 08-civ-6599, 2008 WL 8985358, at *1 (S.D.N.Y. Aug. 26, 2008). And the Middle District of Tennessee ordered disclosure of 46-year-old grand jury testimony related to the indictment of Jimmy Hoffa. *In re Tabac*, No. 3:08-mc-0243, 2009 WL 5213717, at *1 (M.D. Tenn. Apr. 14, 2009).

## III.    The 1942 *Tribune* grand jury testimony should be disclosed.

This Petition presents an extraordinary case in which the public has a compelling interest in disclosure of certain grand jury testimony, and time has eroded all justifications for continued secrecy. The Coalition seeks the testimony at issue to complete the historical record and inform the public about a key event in U.S. history that continues to foster discourse and debate

concerning fundamental aspects of our democracy, such as the scope of press freedom during wartime. Where, as here, the passage of time has rendered continued secrecy unnecessary, the "party asserting a need for grand jury transcripts will have a lesser burden in showing justification." *Douglas Oil*, 441 U.S. at 223; *see also In re Grand Jury Proceedings, Miller Brewing Co.*, 717 F.2d at 1138 (stating the standard for disclosure is "'highly flexible,' 'adaptable to different circumstances and sensitive to the fact that the requirements of secrecy are greater in some situations than in others'"). This Court should exercise its "substantial discretion" to determine whether grand jury testimony should be disclosed, and grant the Coalition's Petition. *In re Eyecare Physicians*, 100 F.3d at 518.

### A. The grand jury testimony is historically significant.

The *Tribune* grand jury investigation remains the only time in American history that the government sought to prosecute a mainstream journalist and newspaper under the Espionage Act. (Carlson Decl. ¶ 4.) The investigation received widespread publicity at the time, and it continues to be the subject of significant media attention and scholarly discussion. (*See* Carlson Decl. ¶ 6 (listing a sample of recent discussions of the investigation in newspapers, magazines, scholarly publications, books, television and radio programs and online publications).) After more than seven decades, the ongoing discussion of this incident tends to prove "that the public's interest in release of the information is substantial." *In re Craig*, 131 F.3d at 107.

The *Tribune* case speaks directly to a fundamental tension at the core of our democracy, involving the public's right to know and the government's duty to protect its citizens in a time of war. Public debate about the government's response to leaks of sensitive national security information has rarely, if ever, been more robust or urgent. *See* Leonard Downie, Jr. & Sara Rafsky, *The Obama Administration and the Press: Leak investigations and surveillance in post-9/11 America* (2013), *available at* https://www.cpj.org/reports/us2013-english.pdf (describing

how six government employees and two contractors have been subject to Espionage Act prosecutions for leaking information to the press since 2009, compared with three in all prior U.S. administrations). The existence of "vigorous and sustained debate" about the *Tribune* incident and the issues it represents militates strongly in favor of "ensuring the pages of history are based upon the fullest possible record." *In re Am. Historical Ass'n*, 49 F. Supp. 2d at 295.

Moreover, historians disagree about how Johnston obtained information about the Navy's code-breaking, what Johnston and others at the *Tribune* intended to accomplish by publishing the story, whether the grand jury heard evidence that publication harmed national security, and why the grand jury did not return an indictment. (*See* Carlson Decl. ¶ 24; Declaration of Dr. John Prados ("Prados Decl.") ¶¶ 6-8, attached as Exhibit B hereto.) The incident also raises important policy questions about press freedom and national security, and the proper role of the judicial system in cases involving both. (*See* Carlson Decl. ¶ 25; Prados Decl. ¶¶ 6-8.)

Disclosure of the grand jury testimony will enhance the public's understanding of a significant historical event, fill in gaps in the historical record, and foster discussion in both popular media and scholarly journals. *See In re Kutler*, 800 F. Supp. 2d at 48 (finding that these facts weigh in favor of disclosure); *In re Am. Historical Ass'n*, 49 F. Supp. 2d at 297 (same). (*See* Carlson Decl. ¶¶ 24-25 (describing gaps in the historical record); Prados Decl. ¶¶ 6-8 (highlighting questions of "continuing historical importance" that could be illuminated by release of the grand jury material).)

**B. The testimony is 72 years old, and most of the people involved in the investigation died more than 40 years ago.**

Seventy-two years have elapsed since the grand jury heard testimony in the *Tribune* case. That is twice the amount of time that had elapsed in the Watergate case (36 years). *See In re Kutler*, 800 F. Supp. 2d at 49. And it is significantly more time than had elapsed in the Hoffa

11

case (46 years), the Hiss case (49 to 52 years), and the Rosenberg case (57 or 58 years). *In re Tabac*, 2009 WL 5213717, at *1; *In re Am. Historical Ass'n*, 49 F. Supp. 2d at 277; *In re Nat'l Sec. Archive*, 2008 WL 8985358, at *1.

Most of the people involved in the *Tribune* scandal passed away more than 40 years ago. (*See* Carlson Decl. ¶ 26 n.1 (identifying the year of death for sixteen of the principal players, including eight grand jury witnesses).) Only three or four of the known grand jury witnesses lived past the year 1976. The last confirmed death of a known grand jury witness occurred 17 years ago, when Frank Waldrop died at the age of 92.[4] Accordingly, no legitimate privacy interests weigh against disclosure. *See In re Kutler*, 800 F. Supp. at 49 (finding no privacy interests implicated when the testifying witness, and those likely mentioned in the testimony, had passed away); *In re Nat'l Sec. Archive*, 2008 WL 8985358, at *1 (ordering disclosure of testimony by witnesses now deceased); *In re Tabac*, 2009 WL 5213717, at *1 (same). The passage of time has eroded any need for continued secrecy.[5]

## C. Disclosure would not undermine any of the traditional justifications for grand jury secrecy.

The traditional justifications for maintaining grand jury secrecy simply are no longer applicable to this case. *See Butterworth v. Smith*, 494 U.S. 624, 632–33 (1990) (explaining that when a grand jury investigation ends, many of the reasons for secrecy disappear). The *Tribune* grand jury investigation concluded more than seven decades ago. There is no fear that a target of

---

[4] Although the Coalition cannot say with certainty whether the unidentified naval officers are still living, it is reasonable to infer that all of the witnesses are deceased. Most of the people involved in the investigation died more than 40 years ago, and any surviving witnesses would be approximately 100 years old.

[5] In the event the Court finds privacy interests to be implicated by the testimony, the proper remedy is to make minimal redactions necessary to address the privacy concern, not to withhold the entire testimony. *See In re Kutler*, 800 F. Supp. 2d at 50 (stating that the National Archives review procedures "allay any remaining privacy concerns" and "greatly diminish any interest in maintaining the secrecy of the requested documents").

the investigation will flee, that someone will tamper with or importune the grand jury, that the grand jurors will be inhibited in their deliberations, that witnesses will withhold information, or that an innocent accused will be revealed. *See Douglas Oil*, at 441 U.S. at 219 (enumerating these justifications for grand jury secrecy). There is no uncertainty about the identities of the targets of the grand jury or the scope of the government's investigation, and disclosure neither threatens an ongoing criminal investigation nor implicates privacy interests of innocent people. *See In re Eyecare Physicians of Am.*, 100 F.3d 514, 519 (7th Cir. 1996) (describing these concerns as reasons for grand jury secrecy). And, as other courts have recognized, given the passage of time, there can be little concern that disclosure will impact future grand jury witnesses. *See, e.g., In re Am. Historical Ass'n*, 49 F. Supp. 2d at 292 ("The inhibiting effect of such disclosure is insignificant"); *In re Kutler*, 800 F. Supp. 2d at 49 (concluding that disclosing 36-year-old records for historical purposes will not deter future witnesses from providing grand jury testimony, particularly in light of "far more immediate potential causes of disclosure, such as leaks, press attention, public statements by witnesses and revelations at trial") (quotation marks omitted).

Moreover, all of the grand jury materials, aside from the testimony at issue, have been made public, including transcripts of Department of Justice interviews with Johnston and Maloney. (*See* Carlson Decl. ¶ 7.) "[E]ven partial previous disclosure often undercuts many of the reasons for secrecy." *In re Craig*, 131 F.3d at 107; *In re Kutler*, 800 F. Supp. 2d at 49 (noting that because grand jury testimony of certain Watergate figures had been made public, the continuing privacy interests in keeping President Nixon's testimony sealed were "minimal"). Because so much is known about the *Tribune* grand jury proceedings, there can be little justification for maintaining the testimony of the grand jury witnesses under seal.

13

Finally, and tellingly, even the Office of Legal Counsel ("OLC") of the Department of Justice has determined that the need for secrecy related to the *Tribune* investigation has dissipated. Last year, the OLC published a volume of significant, previously secret legal opinions, including two by Oscar Cox, assistant solicitor general, concerning the prosecution of Johnston, Maloney, and the *Tribune*. *See* Oscar S. Cox, Memorandum Opinion for the Attorney General, *in* 1 Supplemental Opinions of the Office of Legal Counsel of the U.S. Dept. of Justice, at 93-105 (Nathan A. Forrester, ed., 2013). The OLC justified disclosure because "there are gaps in the public record of Attorney General and OLC opinions" and although the memos "are pre-decisional advice — they address the legality of contemplated action — and thus are covered by both the attorney-client and deliberative process privileges," the need for confidentiality has "recede[d]" with time. Nathan A. Forrester, 1 Supplemental Opinions of the Office of Legal Counsel of the U.S. Dept. of Justice, at viii (2013).

The same rationale applies in full force to the grand jury testimony now sought. There are gaps in the public record, and while prudential reasons once prevented the disclosure of the testimony, the need for confidentiality has receded. Because no legitimate need for secrecy remains, the compelling reasons the Coalition identified for unsealing the testimony are more than sufficient to justify disclosure.

## CONCLUSION

This is an extraordinary case that continues to be of significant interest to historians, journalists and the general public 72 years after the grand jury concluded without issuing an indictment. As set forth in detail above, there is a compelling public interest in the material; the public is entitled to the fullest possible historical record about an incident that "fosters vigorous and sustained debate, not only about the case itself, but also about broader issues concerning

14

fundamental and, at times, countervailing aspects of our democracy — freedom of expression, . . . governmental investigative power, . . . and the role and function of grand juries themselves." *In re Am. Historical Ass'n*, 49 F. Supp. 2d at 295. And "little traditional need for secrecy remains[.]" *In re Special February, 1975 Grand Jury*, 662 F.2d at 1236. Accordingly, weighing "all the factors which compete in grand jury matters," *In re Miller Brewing Co.*, 717 F.2d at 1138, disclosure is appropriate in this case.

For all the foregoing reasons, the Coalitions respectfully requests that the Court grant the Petition and order the grand jury testimony to be disclosed.

Dated: November 18, 2014                    Respectfully submitted,

                                            By:___*/s/Brendan J. Healey*_____
                                                 Brendan J. Healey
                                                 Mandell Menkes LLC
                                                 One North Franklin Street
                                                 Suite 3600
                                                 Chicago, Illinois 60606
                                                 (312) 251-1000
                                                 (312) 251-1010 (fax)
                                                 bhealey@mandellmenkes.com

                                                 *Counsel for Petitioners*